UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 1392, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Cause No. 1:19-cv-419 ) |
| INDIANA MICHIGAN POWER CO., | ) ) |
| Defendant. | ) |

**COMPLAINT TO ENFORCE ARBITRATION AWARD**

The Plaintiff, International Brotherhood of Electrical Workers, Local 1392 (the "Union"), for its Complaint to Enforce Arbitration Award against the Defendant, Indiana Michigan Power Company (the "Company"), states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. The Union is a labor organization within the meaning of Section 2(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(5), and Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, and is the exclusive collective bargaining representative for certain of the Company's employees in its Fort Wayne area business units. The Union's main office is located at 56436 Strasser Lane, South Bend, IN 46619.

2. The Company is an employer doing business in the State of Indiana that maintains district offices in and around Fort Wayne, Indiana, at which members of the Union are employed.

3. This Court has subject matter jurisdiction over this action pursuant to Section 301 of the LMRA, 29 U.S.C. § 185, and 28 U.S.C. §§ 1331 and 1337.

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and 29 U.S.C. § 185. This is a judicial district in which the Company is engaged in commerce by distributing electricity

1

to its customers.

**STATEMENT OF FACTS**

5.     The Union and the Company are parties to numerous collective bargaining agreements, two of which are applicable to The Company's Fort Wayne operations. The applicable collective bargaining agreements are referred to as the "Master" collective bargaining agreement, which covers the Company's operations in numerous states and to which several IBEW local unions (including the Union) are a party (Exhibit A); and the "Local" collective bargaining agreement, which is between only the Union and the Company, and which covers only the Fort Wayne area. (Exhibit B).

6.     Article II (b)(3) of the Master Agreement provides that the Company shall have the authority to "suspend, discharge, or otherwise discipline employees *for justifiable reasons*." (emphasis added).

7.     Article II (4)(3) of the Local Agreement provides that an employee's seniority shall terminate when the employee is "discharged for *just cause*." (emphasis added).

8.     Article XI of the Master Agreements contains a grievance procedure titled, "Adjustment of Differences." The grievance procedure culminates in arbitration before an arbitrator selected from the Federal Mediation and Conciliation Service ("FMCS"). Under Article XI (3)(a)(6), the Arbitrator's decision "shall be final and binding on both parties."

9.     On July 20, 2017, the Company summarily discharged bargaining unit employee Daniel Johnson. Johnson had been employed with The Company in the Line Mechanic job series since July 2004.

10.    The Company's stated reason for discharging Johnson was, "Engaging in outside employment while on sick leave." (Exhibit C).

11. The Union filed a contractual grievance protesting the Company's discharge of Johnson, contending The Company's discharge of Johnson was not for "justifiable reasons" as required by the collective bargaining agreements. (Exhibit D).

12. The grievance went unresolved at the lower steps of the contractual grievance procedure, and the Union submitted the grievance to arbitration.

13. The parties selected Arbitrator Cynthia S. Stanley, *Esq.* ("Arbitrator Stanley") to hear and decide the grievance from an FMCS panel pursuant to Article XI (3) of the Master Agreement.

14. The issue to be decided by Arbitrator Stanley was whether the Company discharged the Grievant, Dan Johnson, for justifiable reasons, and if not, what is the appropriate remedy?

15. Arbitrator Stanley conducted an arbitration hearing on December 5, 2018. The parties were given a full and fair opportunity to make opening statements, examine witnesses, and introduce evidence at the hearing.

16. The parties filed post-hearing briefs with Arbitrator Stanley on February 18, 2019. (Exhibits E & F).

17. Arbitrator Stanley issued her decision sustaining the Union's grievance on February 21, 2019. (Exhibit G). Arbitrator Stanley analyzed the discharge under the "Seven Tests of Just Cause" and found that "no part of just cause has been met." As a remedy, Arbitrator Stanley ordered the Company to "immediately reinstate Grievant with full back pay, benefits, and seniority; and purge his file of all reference to this discipline." Arbitrator Stanley did not provide for any deductions or credits in her backpay award.

18. Arbitrator Stanley retained jurisdiction over the case for sixty (60) days to resolve any disputes over the remedy or its implementation.

19. After Arbitrator Stanley's decision, the parties disagreed over the amount of backpay to which Johnson was entitled. The parties agreed that the $10,140.00 in unemployment benefits that Johnson received while he was discharged should be reduced from his backpay. The Company calculated Johnson to be owed -$29,166.51, and the Union calculated Johnson to be owed $244,850.83, plus $31,604.64 in retirement benefits.

20. Therefore, the parties invoked Arbitrator Stanley's reserved jurisdiction over the remedy. The parties agreed to waive a hearing before Arbitrator Stanley, and to allow Arbitrator Stanley to decide the amount of backpay to which Johnson was entitled based on the parties submitting supplemental briefs with their calculations and arguments. The briefs were due on or before June 7, 2019.

21. The parties disagreed over the following items:

   a. Whether and in what amount Johnson's backpay should be reduced for failure to mitigate his damages, with the Company seeking to deduct $131,572.00;

   b. Whether Johnson's interim earnings from his side-business ($40,109.21) should be deducted from his backpay;

   c. Whether Johnson's backpay should be reduced by $24,912.28 for the period of time during which the Company claims Johnson was unavailable to be present at the third-step grievance meeting;

   d. The amount of Johnson's overtime backpay;

   e. The amount of Johnson's ICP bonus backpay;

   f. Whether Johnson's backpay should include the amount of money he paid for health insurance during the period of his discharge, minus the amount he would have paid for health insurance on the Company's plan had he not been discharged (a total of $22,340.19);

4

    g.  Whether Johnson's backpay should include the Company's 401(k) match and the growth on the 401(k) he missed out on;

    h.  Whether Johnson's backpay should include his unused Personal Days Off time of eight hours, equaling $285.36;

    i.  Whether Johnson's backpay should include the amount of money ($772.85) he paid for additional vacation time prior to his discharge but was unable to use because of his discharge;

    j.  The amount of Johnson's straight time backpay; and

    k.  Whether Johnson should be awarded interest on the backpay.

  22.  In the Company's supplemental backpay brief, it argued Johnson's backpay was actually -$63,979.64. (Exhibit H).

  23.  The Union argued in its backpay brief that Johnson should be awarded $244,850.83, plus interest, for a total of $264,438.89. (Exhibit I). The Union requested that $15,655.83 of the total backpay be deposited into Johnson's 401(k) account as Johnson's contribution to the 401(k) account.  In addition, the Union requested that the Company be ordered to deposit a matching contribution into Johnson's 401(k) and reimburse Johnson for the lost growth on the 401(k).

  24.  The Union also requested that the Arbitrator order the Company to reimburse the Union for its attorney's fees expended on the backpay portion of the arbitration, arguing the Company's position regarding Johnson's backpay was frivolous and in bad faith inasmuch as no reasonable person could have believed that Johnson's backpay amounted to -$30,000.

  25.  On June 11, 2019, Arbitrator Stanley issued her Supplemental Ruling on Back Pay. (Exhibit J). She ordered the Company to pay Johnson $244,850.83, plus interest of $19,588.07, for a total amount of $264,438.39. She ordered $15,655.83 of the backpay to be deposited into

Johnson's 401(k) account rather than paid to Johnson directly. Arbitrator Stanley did not order the Company to make a matching contribution to Johnson's 401(k) nor did she include an amount for unrealized growth as requested by the Union.

26. Arbitrator Stanley found that the Company's positions on back-pay were frivolous and in bad-faith. She thus ordered the Company to reimburse the Union for its attorney's fees expended in the supplemental remedy stage of the arbitration. She retained jurisdiction for 60 days on the attorney's fees issue and ordered that attorney's fees briefs be submitted by June 25, 2019.

27. On June 24, 2019, the Union submitted its fee statement requesting $2,560.00 in attorney's fees. (Exhibit K). The Company submitted a brief in opposition to the Arbitrator awarding the Union any attorney's fees. (Exhibit L).

28. On June 28, 2019, Arbitrator Stanley issued her Ruling on Attorney Fees, finding the Union's fee statement to be reasonable, and ordering the Company to pay the Union $2,560.00 in attorney's fees. (Exhibit M).

29. The Company has since refused to pay Johnson any amount of the backpay awarded to him or to pay the Union its attorney's fees awarded to it.

## CAUSE OF ACTION
### Breach of Contract Pursuant to 29 U.S.C. § 185

30. The collective bargaining agreement between the Union and the Company is a binding and enforceable contract between an employer and a labor organization under Section 301 of the LMRA, 29 U.S.C. § 185.

31. The Company's refusal to comply with Arbitrator Stanley's Award constitutes a breach of the collective bargaining agreement, which renders arbitration awards "final and binding on both parties."

32. Johnson and the Union have suffered damages by virtue of the Company's breach

of contract, including, but not limited to, the loss of backpay and attorney's fees awarded by Arbitrator Stanley;

33. The Company's refusal to comply with Arbitrator Stanley's Award is frivolous, groundless, in bad faith, and/or without substantial justification, entitling the Union to its attorney's fees for this action.

WHEREFORE, the Union respectfully requests the following relief:

1. An Order confirming Arbitrator Stanley's awards of backpay and attorney's fees;

2. An Order directing the Company to pay Johnson the amount of backpay ordered by Arbitrator Stanley, plus pre-judgment interest from the date of the Award to the date of the judgment;

3. An order directing the Company to pay the Union the amount of attorney's fees ordered by Arbitrator Stanley, plus pre-judgment interest from the date of the Award to the date of the judgment;

4. An Order directing the Company to pay the Union's costs and attorney's fees for this action; and

5. Such further relief the Court deems just and equitable.

Respectfully submitted:

**MACEY SWANSON LLP**

*/s/ David T. Vlink*
David T. Vlink, #30182-45
445 N. Pennsylvania St., Ste. 401
Indianapolis, IN 46204
Phone: (317) 637-2345
Fax: (317) 637-2369
E-mail: DVlink@fdgtlaborlaw.com
*Attorney for the Union*